**In re SOUTHWEST FLORIDA HEART GROUP, P.A., Debtor.**

**No. 9:05–BK–17167–ALP.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

June 23, 2006.

Jeffrey W. Leasure, Fort Myers, FL, for Debtor.

## ORDER ON THE HEART GROUP P.L. MOTION FOR ADMINISTRATIVE CLAIM AGAINST THE ESTATE FOR WRONGFUL DISCONNECTION AND REMOVAL OF THE HEART GROUP P.L.'S PHONE SYSTEM AND FOR SANCTIONS

(Doc. No. 238)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration is a Motion for Administrative Claim against the Estate for Wrongful Disconnection and Removal of the Heart Group P.L.'s Phone System and for Sanctions (Doc. No. 238), filed by The Heart Group P.L. (The Heart Group) on March 6, 2006. The Heart Group seeks a determination by this Court of the amount of damages against the Estate for the removal of the phone system and to enter sanctions against the Trustee for his wrongful actions. In due course, the matter was set for a hearing, at which time the Court heard testimony of witnesses. Having considered the Motion and the record, including the documentary evidence offered and admitted into evidence, the Court now finds and concludes as follows:

The Debtor filed its Petition for Relief under Chapter 11 on August 29, 2005. On November 18, 2005, Louis X. Amato was appointed as the Chapter 11 Trustee. On January 13, 2006, this Court entered an Order on Plaintiff's Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Adv.Pr.05–910, Doc. No. 23). Pursuant to the Order, The Heart Group purchased equipment from the Chapter 11 Trustee located at the Riverwalk Office Building, 8540 College Parkway, Fort Myers, Florida 33919. On Jan-

uary, 31, 2006, The Heart Group paid the Trustee $428,813.00 for the equipment it purchased, and the Trustee executed a Bill of Sale. (The Heart Group's, Composite Exhibit "B"). One of the items purchased by The Heart Group was Item Number 302, described as, 1 Telephone System, AT & T. (The Heart Group's, Composite Exhibit "B"). On January 30, 2006, the Trustee filed its Application to Employ Auctioneer (Doc. No. 185). On March 29, 2006, this Court entered its Order on Motion to Conduct Auction Sale and Sell Property of the Estate Pursuant to 11 U.S.C. § 363 and Application to Employ Auctioneer (Doc. No. 257). In its Order, this Court authorized the Trustee to employ Bay Area Auction Services, Inc., as Auctioneer.

On February 27, 2006, The Heart Group's administrator, James Langley, the Trustee, and Greg Farner of Bay Area Auctions, Inc. (the parties) met to discuss which equipment and furniture was purchased by The Heart Group. During their meeting, the parties agreed to the items which were to be removed from the premises since they were the Estate's equipment and furniture. Furthermore, the parties also confirmed what equipment and furniture had been purchased by The Heart Group and was to remain in the Riverwalk Building. The Heart Group contends that the phone system was specifically discussed and it was made extremely clear that the AT & T phone system had been purchased by The Heart Group and was not to be removed.

On February 28, 2006, the movers from Bay Area Auctions, Inc. arrived at the location as scheduled and removed the furniture and equipment which was not sold to The Heart Group. The movers left the location without removing the phone system. It appears that the Trustee contacted Mr. Farner to ask if the movers had removed the phone system. The Trustee was told that the phone system had not been removed and the Trustee instructed Mr. Farner to contact the movers and have them remove the phone system. On the same date, the movers returned to the location and disconnected the entire phone system at approximately 3:15 p.m.

Mr. Langley and other staff members immediately approached the movers and questioned why the phone system had been disconnected. The movers contacted Mr. Farner and he was able to get The Heart Group in contact with the Trustee who claimed that the movers had made a mistake. As a result of the phone system being disconnected, The Heart Group lost the use of the auxiliary departments' numbers, voice mail and the messaging system was also impacted. Furthermore, since the phone system had not been transferred properly to the answering service, all incoming calls were also not properly being routed. Thus, as a result of the disconnection, the employees of The Heart Group had to use cell phones and emails to notify the physicians, their staff, hospital departments and the answering service. On the same date, The Heart Group contacted Aztek Communications who was able to restore the basic phone service shortly before 5:00 p.m. However, Aztek Communications was unable to restore the voicemail and messaging systems and, therefore, The Heart Group contacted Avaya, Inc. who was able to re-establish the systems at approximately 11:15 a.m. the following day.

It is The Heart Group's contention that as a result of the phone system being disconnected, approximately 200 incoming calls were missed, outgoing calls could not

be made to patients, and therefore, creating a tremendous back up in their workload, patients could not access nursing, clinical message, prescription refill lines and the scheduling voicemails were also impacted.

As a result of the foregoing, The Heart Group seeks an allowance of an administrative expense in the amount of $1,470.00 for lost employee time at the average hourly rate of $30.00 per hour, which includes employer overhead; $3,000.00 for estimated lost calls at $10.00 per call; out of pocket expense in the amount of $552.80; and also seeks reimbursement for attorney fees and cost for: (1) depositions and witness fees in the amount of $870.00 and attorney fees at the hourly rate of $290.00 per hour, totaling $3,000.00.

The record also reveals that the Trustee, without admitting liability, offered to pay The Heart Group the amount of $552.80 to reimburse it for the expenses incurred due to the disconnection of the phone system. It is the Trustee's contention that The Heart Group refused to accept the offer of reimbursement.

■ Based on the foregoing, this Court is satisfied and it is without dispute that during the hiatus of the approximate two hours the employees of The Heart Group were not idle and performed their duties, *albeit*, without the use of the phone system. Thus, the loss of employees time claimed is speculative and, therefore, the expense is not warranted, specifically, the item indicated as employer overhead. Furthermore, the record is devoid of any competent evidence to establish the sum of lost calls and therefore, this item is not properly allowable. Therefore, this Court is satisfied that based upon the totality of the evidence the Heart Group is entitled to an allowance of an administrative claim in the total sum of $552.80.

■ In addition to its claim for administrative expenses, The Heart Group also requests this Court to impose sanctions against the Trustee for his wrongful actions in disconnecting the phone system. While it is without dispute that it was improper to disconnect the phone system, this Court is satisfied that it was due to a misunderstanding and would not rise to the level of willful malicious conduct which warrants the imposition of sanctions. However, this Court is also satisfied that the necessity to engage the service of counsel to enforce the claim for damages as a result of a wrongful action of the agents for the Trustee would be a compensable item. Therefore, this Court is satisfied that the imposition of monetary damages is appropriate against the Trustee for the out of pocket expenses incurred by The Heart Group for depositions and witness fees in the amount of $870.00 and attorneys fees in the amount of $2,000.00.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that The Heart Group P.L. Motion for Administrative Claim against the Estate for Wrongful Disconnection and Removal of the Heart Group P.L.'s Phone System and for Sanctions (Doc. No. 238) be, and the same is granted.